UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE THE APPLICATION OF DREYMOOR FERTILIZERS OVERSEAS PTE LTD | CASE NO. 1:20-mc-00192 |
| REQUEST FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | |

**MEMORANDUM OF LAW IN SUPPORT OF AN APPLICATION
FOR SUPPLEMENTAL DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

I.      FACTUAL BACKGROUND ............................................................................................. 3

II.     JURISDICTION AND VENUE ........................................................................................ 6

III.    LEGAL ARGUMENT ....................................................................................................... 7

        A.      The Application Satisfies the Statutory Requirements of 28 U.S.C.
                § 1782............................................................................................................... 7

        B.      The Application also satisfies *Intel's* Four Discretionary Factors ............ 13

IV.     CONCLUSION ................................................................................................................ 16

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A.*
  *v. JAS Forwarding (USA), Inc.,*
  747 F. 3d. 1262 (11th Cir. 2014) ........................................... 12

*Application of Esses,*
  101 F.3d 873 (2d Cir. 1996) ............................................ 13

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
  673 F.3d 76 (2d Cir. 2012) .......................................... 3, 10

*Gorsoan Limited v. Bullock,*
  652 Fed.Appx. 7 (S.D.N.Y. 2016) .................................... 15

*Gushlak v. Gushlak,*
  486 Fed. Appx. 215 (2d Cir. 2012) ..................................... 3

*In re Application for an Order Permitting*
  *Metallgesellschaft AG to take Discovery,*
  121 F.3d 77 (2d Cir. 1997) ............................................ 13

*In re Application of Hornbeam Corp.,*
  2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ....................... passim

*In re Application of Hornbeam Corp.,*
  2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015) ........................ 11

*In re Edelman,*
  295 F.3d 171 (2d Cir. 2002) ........................................ 3, 9, 14

*In re Godfrey,*
  526 F.Supp.2d 417 (S.D.N.Y. 2007) .................................... 8

*In re Honeywell Int'l, Inc. Sec. Litig.,*
  230 F.R.D. 293 (S.D.N.Y. 2003) ...................................... 10

*In re Hornbeam,* -- Fed.Appx. --, 2018 WL 416486 (2d Cir. Jan. 16, 2018) ................ 3

*In re Servicio Pan Americano de Proteccion,*
  354 F.Supp.2d 269 (S.D.N.Y. 2004) ................................... 12

*In re Veiga,*
  746 F.Supp.2d 8 (D.D.C. 2010) ....................................... 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ................................................................................................... passim

*Lancaster Factoring Co. Ltd. v. Mangone*,
   90 F.3d 38 (2d Cir. 1996) ................................................................................................. 9

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ............................................................................... 10, 15, 16

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
   No. 1:08-cv-269 (LEK/RFT), 2008
   WL 3884374 (N.D.N.Y. Aug. 18, 2008) ........................................................................ 16

**Statutes**

28 U.S.C. § 1782 ..................................................................................................... passim

Applicant, Dreymoor Fertilizers Overseas Pte Ltd. ("Dreymoor" or "Applicant"), by and through undersigned counsel, respectfully petitions this Court for an *ex parte* order pursuant to 28 U.S.C. § 1782 authorizing it to take discovery from the intermediary banks H.S.B.C. Bank U.S.A., N.A.; Bank of New York Mellon; JPMorgan Chase Bank, N.A.; Citibank N.A.; Deutsche Bank (and its affiliates Deutsche Bank Trust Company Americas and Bankers Trust Company, collectively referred to as "Deutsche Bank" unless referring to the specific participating bank); Wells Fargo Bank, N.A.; Commerzbank AG; and Bank of America, N.A. (the "Intermediary Banks"), found in the Southern District of New York.

A Final Award in the amount of €6,211,091.06 and $339,761.42 (the "Award") has been issued in favor of Dreymoor in an ICDR Arbitration in New York.[1]  The Award is against both UAB AVAgro and AVAgro LLC.  Applicant now seeks to enforce that award in an action pending in Lithuania entitled *Dreymoor Fertilizers Pte Ltd v. UAB AVAgro and AVAgro LLC*, Case No. e2T-34-943/2020 (the "Lithuanian Enforcement Action"). A related action involving title to the products purchased with the funds supplied by Dreymoor (the "Products") is also pending in Lithuania before the Klaipeda Regional Court entitled *Klasco v. UAB Avagro*, Case No. e2T-1099-538/2019 (the "Klasco Action").  Based on the Award, Dreymoor is an interested party as it holds an interest in  the Products and intends to intervene in such action.  Dreymoor also anticipates bringing additional litigation against the involved parties as discussed below (the "Future Actions").  The evidence sought here is for use in the Lithuanian Enforcement Action, the Klasco Action and the Future Actions (collectively, the "Actions").

---

[1] *UAB AVAgro v. Dreymoor,* International Centre for Dispute Resolution, Case No. 01-19-0000-3381 (the "Arbitration").

All transfers between financial institutions in different countries in U.S. dollars require the use of "intermediary" or "correspondent" banks through which the transfers are routed. For transfers that are cleared in U.S. dollars, the intermediary bank must be located in the United States, as are the Intermediary Banks from which discovery is sought here.

Applicant seeks discovery from the above-listed intermediary banks, which are located in this District and have acted either as direct transfer banks or as the intermediary or correspondent banks for the payments and transfers which are or will be at issue in the Actions. Based on Applicant's investigation of the intermediary or correspondent banks involved in the transactions between the parties in the foreign proceedings, the banks from which the Applicant seeks discovery are H.S.B.C. Bank U.S.A., N.A.; Bank of New York Mellon; JPMorgan Chase Bank, N.A.; Citibank N.A.; Deutsche Bank; Wells Fargo Bank, N.A.; Commerzbank AG; and Bank of America, N.A. These banks are known or likely to have served as intermediary or correspondent banks for the U.S. Dollar transfers between the parties in the foreign proceeding.

The present application clearly meets the requirements for seeking discovery under Section 1782. *First*, the parties from which discovery is sought, the Intermediary Banks, are present within the Southern District of New York. *Second*, the documents requested are "for use" in the ongoing Lithuanian Actions and contemplated Future Actions which the Applicant intends to bring against transferees of the funds. *Third*, as a party in the Actions, Applicant qualifies as an "interested person" under Section 1782.

Further, the four discretionary factors set out by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) weigh in favor of granting Applicant's application. Briefly, the Intermediary Banks are not parties to the foreign actions, there is no restriction on the use of this discovery in the foreign actions, the Applicant is

2

not circumventing any proof gathering motivation in Lithuania and the discovery requested is narrowly tailored to highly relevant documents easily assembled and routinely supplied by intermediary banks.

The present application is properly made *ex parte*.  "[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."  *Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012) (summary order); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 78 (2d Cir. 2012) (reviewing district court's grant of motion to quash subsequent to *ex parte* grant of § 1782 application); *In re Edelman*, 295 F.3d 171, 173-175 (2d Cir. 2002) (same); see also *In re Hornbeam*, -- Fed.Appx. --, 2018 WL 416486, *2 (2d Cir. Jan. 16, 2018) (summary order) ("this court has decided appeals from motions to quash *ex parte* § 1782 subpoenas without identifying any impropriety in the *ex parte* nature of the § 1782 application.").

Requests for transfer records from intermediary banks are routine and rarely opposed by such banks. In previous cases seeking similar discovery from intermediary banks under § 1782, the Court noted that "New York Banks routinely receive and comply with similar subpoenas issued pursuant to 28 U.S.C. § 1782.  In response . . . the Banks have searched their electronic transaction databases for the relevant terms timely provided counsel with sample electronic spreadsheets listing the basic information relating to any wire transfers that satisfy the search parameters." *In re Application of Hornbeam Corp.*, 2014 WL 8775453, *1 (S.D.N.Y. Dec. 24, 2014).

## I.   <u>FACTUAL BACKGROUND</u>

This action arises from the efforts by Dreymoor, a Singapore corporation, to enforce the Award against UAB AVAgro, a Lithuanian fertilizer trading corporation ("UAB") and its parent company AVAgro LLC, a limited liability company based in Kansas ("LLC"), and collectively

with UAB, "AVAgro").  (Declaration of Suraj Aggarwal, dated April 10, 2020 (the "Aggarwal Decl."), ¶¶ 4, 5, 6.)  At all relevant times, UAB was wholly owned by LLC which, in turn, was wholly owned by a single individual, Anna Mikhailova ("Ms. Mikhailova"). Ms. Mikhailova handled all of the negotiations for AVAgro in the Dreymoor transaction. (Aggarwal Decl., ¶ 7.)

The Award arose from AVAgro's failure to pay approximately €6 million provided by Dreymoor for the purchase of the Products – approximately 27,000 tons of UAN, a liquid fertilizer. UAB, the original obligor, defaulted on its obligation to repay this amount to Dreymoor in 2018 after UAB was unable to resell the Products.  (Aggarwal Decl., ¶ 8.) After such default, Ms. Mikhailova reaffirmed the debt due Dreymoor, and agreed to add a further company, LLC, as an obligor on such debt. She represented that LLC had separate assets which would be used to repay Dreymoor. (Aggarwal Decl., ¶ 9.)  Ms. Mikhailova also agreed to personally guarantee the debt, but in the meantime secretly used the limited assets of LLC to fund new, unrelated business, and diverted the proceeds of that new business to unknown third parties, leaving the Dreymoor debt unpaid. (Aggarwal Decl., ¶ 10.)

Meanwhile, the Products were stored – and continue to be stored unsold – at Klaipeda Stevedoring Company ("Klasco") – a port facility in Lithuania, running up millions of dollars of storage charges that UAB has also failed to pay, while the market value of the Products has plummeted. UAB's unpaid storage fees and title to the Products are the subject of the Klasco Action to which Dreymoor is not currently a party, but will soon become a party through intervention.  (Aggarwal Decl., ¶ 11.)

Notwithstanding the fact that the amount owed to Dreymoor for the Products was never paid to Dreymoor, in 2019 UAB initiated the Arbitration against Dreymoor seeking various

declarations regarding the obligations of the parties under the contracts relating to Dreymoor's funding the purchase of the Products (the "Contracts"). (Aggarwal Decl., ¶ 12.)

In response, Dreymoor filed a counterclaim against UAB and LLC, seeking payment of the debt owed under the Contracts. After the hearing in that action, the arbitrator awarded Dreymoor €6,211,091.06 and $339,761.42, jointly and severally, against both UAB AVAgro and AVAgro LLC. (Aggarwal Decl., ¶ 13.) Dreymoor then brought the Lithuanian Enforcement Action to confirm the Award and enforce it against the Products held at Klasco.[2] That action is on-going. (Aggarwal Decl., ¶ 14.)

Meanwhile, neither UAB AVAgro, AVAgro LLC or Ms. Mikhailova have repaid any of the amounts owing under the Contracts or the Award. (Aggarwal Decl., ¶ 15.) As of February 15, 2020, the amount due and owing to Dreymoor under the Contracts is €6,211,091.06 and $339,761.42, and starting 30 days thereafter simple daily interest of 0.02% accrues on unpaid amounts, until paid. (Aggarwal Decl., ¶ 16.)

In Dreymoor's investigation of AVAgro and Ms. Mikhailova, both as part of the Arbitration and for purposes of enforcing the Award, Dreymoor identified several foreign banks that were used for the Dreymoor transaction or that have since been used for other AVAgro payments, namely UniCredit Bank AG, Skandinaviska Enskilda Banken AB ("SEB") and Credit EuropeBank N.V. (Aggarwal Decl., ¶ 17.) Those accounts were used to send or receive payments from Dreymoor to AVAgro, from AVAgro to Dreymoor and/or between AVAgro and the Lithuanian storage facility. In other words, those three banks very likely encompass any bank that AVAgro or Ms. Mikhailova would have used to transfer or fraudulently convey any proceeds of the Dreymoor funds or the funds AVAgro agreed to pay to Dreymoor after it defaulted, to unknown

---

[2] An application for confirmation of the award has also been filed in Kansas against LLC (*Dreymoor v. Avagro LLC*, Case No. 6:20-Mc-00105-EFM), but it does not concern Applicant's request here. Dre

third parties. (Aggarwal Decl., ¶ 18.)  Based on Dreymoor's investigation, it is likely that those

three banks used one of several U.S. banks as intermediate or correspondent banks for the transfer

of payments made in U.S. dollars: H.S.B.C. Bank U.S.A., N.A.; Bank of New York Mellon;

JPMorgan Chase Bank, N.A.; Citibank N.A.; Deutsche Bank; Wells Fargo Bank, N.A.;

Commerzbank AG; and Bank of America, N.A.  (Aggarwal Decl., ¶ 19.)

By this application, Dreymoor seeks to identify payments sent or received by UAB, LLC

or Ms. Mikhailova for the purpose of tracing any transactions with unknown third parties which

were either made using the money paid to UAB by Dreymoor, and/or tracing the proceeds of any

sales to unknown third parties, or to trace assets that may have been fraudulently conveyed to

unknown third parties to impede, hinder or delay Dreymoor's collection of the Award.  (Aggarwal

Decl., ¶ 20.)

Currently, Dreymoor is not aware of the identity of any third parties which received

fraudulent conveyances, but of course will seek to identify those unknown third parties and pursue

any necessary foreign litigation against them, including in the Klasco Action, the Lithuanian

Enforcement Action or the Future Actions.  (Aggarwal Decl., ¶ 21.)  Applicant here seeks

discovery from banks located in this District which were reasonably likely to have been used as

an intermediary bank by UAB AVAgro, AVAgro LLC or Ms. Mikhailova. Those intermediary

banks are H.S.B.C. Bank U.S.A., N.A.; Bank of New York Mellon; JPMorgan Chase Bank, N.A.;

Citibank N.A.; Deutsche Bank; Wells Fargo Bank, N.A.; Commerzbank AG; and Bank of

America, N.A. (Aggarwal Decl., ¶ 22.)

There is <u>no</u> allegation that any of the Intermediary Banks did anything improper or

knowingly participated in any of the transactions. Rather, funds were transferred to/from banks

outside of the U.S. However, these transfers, like all transfers between financial institutions in

different countries in U.S. dollars, required the use of "intermediary" or "correspondent" banks through which the transfers are routed. For transfers that are cleared in U.S. dollars, the intermediary bank must be located in the United States, as are the Intermediary Banks from which discovery is sought here.  (Aggarwal Decl., ¶ 23.)

The discovery sought from the Intermediary Banks here should provide the details of the payments made to any unknown third parties by UAB AVAgro, AVAgro LLC or Ms. Mikhailova, and will allow Dreymoor to locate any assets, including bank accounts held by any third parties, and bring legal actions necessary to recover any fraudulently conveyed assets.  (Aggarwal Decl., ¶ 24.)

Under 28 U.S.C. § 1782, an applicant may be granted discovery in the United States if the party from whom discovery is sought resides or is found in the District, and the discovery is sought "for use" in pending or contemplated foreign proceedings in which the Applicant is an "interested person". This 1782 Application seeking discovery is in aid of the pending Lithuanian Enforcement Action, the Klasco Action and reasonably contemplated Future Actions, and thus satisfies all of the requirements of Section 1782.

## II.    <u>JURISDICTION AND VENUE</u>

Jurisdiction is proper pursuant to Title 28 United States Code Section 1782 as this Application is for discovery involving documents located within the Southern District of New York, necessary to assist Applicant in a foreign court proceeding. Applicant is a party to the Lithuanian Enforcement Action, an interested person in the Klasco Action (and soon to be a party thereto), and interested person in reasonably contemplated Future Actions. Venue in the Southern District of New York is appropriate because the discovery being sought is from corporations located within the Southern District's judicial district.

### III.   **LEGAL ARGUMENT**

The Court should issue an order granting Applicant's request for discovery because (i) Applicant meets the three statutory prerequisites for relief under 28 U.S.C. § 1782, and (ii) the four discretionary factors to be weighed by the Court in exercising its discretion under the statute heavily favor granting the application.

### A.   **The Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782**

Section 1782 of Title 28 of the United States Code, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," authorizes federal district courts to order discovery to assist applicants in obtaining evidence in the United States for use in foreign legal proceedings.[3] "[T]he statute has, over the years, been given increasingly broad applicability." *Bran`di-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and quotations omitted).  To obtain discovery under § 1782, an applicant must satisfy three statutory requirements: (i) the person from whom discovery is sought must reside or be found within the district; (ii) the discovery must be for use in a proceeding before a foreign or international tribunal; and (iii) the application must be made by an interested person. 28 U.S.C. § 1782 (a).

### 1.   *The Intermediary Banks from whom discovery is sought reside in or are found within this District*

The Intermediary Banks from who discovery is sought are "found" in this Judicial District. A company is found where it is incorporated, headquartered or where it is engaged in "systematic and continuous activities." *In re Godfrey*, 526 F.Supp.2d 417, 422 (S.D.N.Y. 2007)

---

[3] 28 U.S.C. § 1782 (a) provides, in relevant part:   "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court."

. Further, a respondent is found if physically present in the district. *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) (respondent is "found" if physically present in the district).

The Applicant seeks production of documents relating to transfers handled by the Intermediary Banks. Each of the Intermediary Banks has offices in this District, are engaged in systematic and continuous business in this District, and maintain the records requested.  Thus, the application satisfies the first § 1782(a) requirement.

### 2. *The Discovery sought by this Application is for use in the Lithuanian Actions*

The application satisfies the second criteria of § 1782 (a) because, the documents requested are "for use" in several ongoing adjudicative proceedings, the Lithuanian Enforcement Action and the Klasco Action (collectively, the "Lithuanian Actions"), and the contemplated foreign Future Actions which the Applicant plans to bring against any third parties who may have been the subject of fraudulent conveyances.

### 3. *Adjudicative Proceeding*

The Second Circuit has interpreted "a proceeding" as used in § 1782 "to mean a proceeding in which an adjudicative function is being exercised."  *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996).  The Lithuanian Enforcement Action is before the Court of Appeal in Lithuania (which has exclusive jurisdiction over proceedings to confirm foreign arbitral awards).  The Klasco Action is before the Klaipeda Regional Court in Klaipeda, Lithuanian, the court which has jurisdiction over civil matters of this nature. Thus, both actions are inarguably ongoing adjudicatory proceedings.

### 4. *For Use in a Proceeding*

The present application also satisfies the second statutory factor, namely that the discovery sought is for use in a foreign proceeding.  The "for use" requirement under § 1782 imposes a *de minimis* burden on the applicant to show that the requested discovery has some relevance to the

foreign proceeding.  *See In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L&M Galleries ("In re Application of Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (the standard for relevance is "broadly permissive"); *In re Veiga*, 746 F.Supp.2d 8, 18 (D.D.C. 2010) ("the burden imposed upon an applicant is de minimis").  Relevance is "broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *In re Application of Sveaas*, 249 F.R.D. at 106-07 (internal quotations omitted).  "Where relevance is in doubt, the district court should be permissive."  *Id.* at 107 (citing *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003)).  District courts should not attempt to determine whether the evidence would actually, or even probably, be discoverable or admissible in the foreign proceeding.  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (noting unanimity among the Circuits that have ruled on the issue).

The discovery sought here will be used to identify transfers of Dreymoor's funds or assets that may have been fraudulently conveyed to avoid Dreymoor's debt, or to trace the ultimate destination of funds that were agreed to be used to satisfy Dreymoor's debt.  Moreover, it is not necessary that the discovery sought will be used immediately or at the present stage in the proceeding.  It is enough that the discovery will be usable at some point therein.  *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015) ("A 'proceeding' means the entire proceeding, not merely its initial stage.").

Further, discovery sought from intermediary banks show the transfer of funds to unknown third parties to support a claim is relevant to the foreign action and satisfies the "for use" requirement.  *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014).  Similar to this application, applicant in *Hornbeam* sought discovery from twelve

intermediary banks for use in two pending BVI actions and one anticipated.  *Hornbeam* involved a joint venture entered into by three individuals.  The individuals incorporated a separate entity which was the sole member of the joint venture, with each individual owning a one-third interest in the member corporation through entities they controlled.  Applicant Hornbeam Corp. was one of those entities, with one of the individuals being its sole beneficial owner, and alleged in its § 1782 application that the other two individuals had engaged "in self-dealing and breached the joint venture agreement by causing [the joint venture] to accept loans secured by [the joint venture's] assets and revenues from entities controlled by [them] and their allies."  *Hornbeam*, 2014 WL 8775453, at *1.

Hornbeam Corp. sought the wire transfer records from the intermediary banks showing the loan funds and the parties involved.  The District Court held the "for use" requirement was satisfied, as the discovery sought was "potentially critical" to the BVI actions because it was relevant to whether the two individuals controlled the entities that loaned funds to the joint venture or provided the funds to those parties to make the loans. Evidence of control of or the provision of funds to the entities that obtained a security interest in the joint venture's assets "would 'provide critical …support' to Hornbeam's anticipated claim that it has been oppressed and discriminated against as the minority shareholder in" the member corporation.  *Hornbeam*, 2014 WL 8775453, at *3.  The Court found the other two § 1782(a) requirements were satisfied and the four *Intel* factors weighed in favor of granting the application, which it did.[4]  *Hornbeam*, 2014 WL 8775453, at *5.

---

[4] A third party eventually intervened in the matter and filed a motion to vacate the Court's order, and after that motion was denied, *In re Application of Hornbeam Corp.*, 2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015), filed a motion for reconsideration, which was also denied, *In re Application of Hornbeam Corp.*, 2017 WL 5515857 (S.D.N.Y. Feb. 17, 2017).  In a summary order, the Second Circuit affirmed both decisions.  *In re Application of Hornbeam Corp.*, 2018 WL 416486 (Jan. 16, 2018).

In *Hornbeam*, the applicant did not know which of the intermediary banks from which it sought discovery "had actually processed transactions for the subject individuals and entities" but those banks "were the Banks most likely to provide such services." *Hornbeam*, 2014 WL 8775453, at *2. Nevertheless, the court granted discovery against all twelve intermediary banks. "Hornbeam Corporation is authorized to issue and serve subpoenas on Bank of America N.A., Bank of N.Y. Mellon, BNP Paribas SA, Citibank N.A., Commerzbank AG, Deutsche Bank AG, HSBC Bank (USA) NA, JPMorgan Chase Bank N.A., Royal Bank of Scotland PLC, Standard Chartered Bank, UBS AG, and Wells Fargo Bank, N.A." *Hornbeam*, 2014 WL 8775453, at *5. None of the intermediary banks appeared in the matter to challenge the subpoenas served on them. Here, Dreymoor knows the banks most likely used for any transactions, and has a reasonable basis to believe the banks that are the subject of this application were the intermediary banks used in those transactions.

Finally, "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004). Instead, the Supreme Court has held that Section 1782(a) requires only that a proceeding "be within reasonable contemplation." *Id.* at 259; See also *In re Servicio Pan Americano de Proteccion*, 354 F.Supp.2d 269, 274 (S.D.N.Y. 2004) ("Section 1782 may be invoked even where foreign legal proceedings are not even underway").[5] Here, in addition to the pending Lithuanian Actions, Dreymoor intends to use the discovery sought here as necessary to initiate further actions against

---

[5] Courts have found that an order of discovery is appropriate for a contemplated proceeding where, as here, the applicant has conducted a detailed investigation before filing the application. See *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F. 3d. 1262, 1271 (11th Cir. 2014) (discovery granted for contemplated proceeding where Section 1782 applicant first conducted "an extensive internal audit" and provided a "detailed explanation of its intent to pursue civil" litigation).

any currently unknown third parties that may be the subject of fraudulent conveyances, or that may otherwise possess funds to which Dreymoor has a claim.

### 5. *Dreymoor is an interested person to the Lithuanian Actions, and other reasonably contemplated Future Actions*

The application also satisfies the third prong of § 1782 because, Applicant qualifies as an "interested person" under Section 1782 in both of the Lithuanian Actions, either as a party (to the Lithuanian Enforcement Action) or an interested person and intended intervenor with an interest in the Products (to the Klasco Action) or as a potential party (in the reasonably contemplated Future Actions). *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (as a party to the foreign proceeding, the applicant qualifies as an interested person); *Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (a party to the underlying foreign proceedings "is an 'interested person' within the meaning of the statute").

The Supreme Court in *Intel* recognized that an interested person is broadly defined as anyone who "possess[es] a reasonable interest in obtaining assistance." *Intel*, 542 U.S. at 256. Applicant is a party to the Lithuanian Enforcement Action and intends to intervene in the Klasco Action. Further, Applicant will be a party in the Future Actions. Accordingly, Applicant is an interested person and satisfies the third prong of § 1782.

### 6. *No other factors weigh against allowing discovery*

In addition to satisfying the above three requirements, there are no factors which would argue against allowing the discovery. The Second Circuit emphasized that the goals of Section 1782 should be considered in deciding motions brought under the statute. "There are two oft-cited goals of § 1782(a). The statute has the twin aims of 1) providing equitable and efficient means to assist parties engaged in international litigation and, by so doing, 2) inviting foreign countries to provide similar assistance to our courts…Further, § 1782(a) should not be applied in a way that

13

will create obvious confusion or skew the results in the foreign litigation." *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002).

These aims will be fulfilled here by granting the requested discovery. The discovery sought will assist the Applicant in the Lithuanian Actions and other potential contemplated foreign actions.

### B.     The Application also satisfies *Intel's* Four Discretionary Factors

Once the statutory requirements are met, as they are here, courts consider the four discretionary factors set forth in *Intel* to determine whether to exercise their discretion to grant the 1782 application: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies;" and (iv) whether the discovery sought is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65.

#### 1.  *Participant in the foreign proceeding*

The first discretionary *Intel* factor undoubtedly favors granting the discovery.  The Intermediary Banks are not participants in the Lithuanian actions.  Further, the Intermediary Banks are not claimed to have participated in any of the wrongdoing alleged in the Lithuanian actions, and thus "are not expected to be parties" to any future litigation. *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014) (finding first factor weighed in favor of granting 1782 Application where intermediary banks "not expected to be parties" to any future litigation).

#### 2.  *The Lithuanian Court would be receptive to the requested discovery and the character of the Lithuanian Proceeding favors granting the Application*

The second discretionary *Intel* factor also favors discovery. There is no restriction on the use of the foreign discovery sought here in the Lithuanian Actions. Indeed, discovery obtained in foreign proceedings has already been accepted in the Lithuanian actions, particularly evidence from the Award and the proceedings relating thereto, which was a necessary basis to support the Lithuanian Enforcement Action regarding the Award. See, *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014) ("no legal barrier to the use of documents obtained under 28 U.S.C. § 1782" in proceedings at issue in that case).

### 3. *The Applicant is not circumventing any Lithuanian Proof-Gathering Restrictions*

For the same reasons, the Applicant is not circumventing any limitation on the use of the discovery that might be applied by the Lithuanian court. The Lithuanian court has already been receptive to the use of foreign evidence, in accepting the Arbitration Award as part of the Lithuanian Enforcement Action. There is no reason to think that it would not be receptive to the evidence sought here, whether or not it could be directly obtained in the Lithuanian actions. There is no requirement that an applicant first attempt to obtain the discovery sought in the foreign proceedings (referred to as the quasi-exhaustion requirement and routinely rejected). *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) ("We have rejected such a 'quasi-exhaustion' requirement, reasoning that it finds no support in the plain language of the statute and runs counter to its express purposes.").

Moreover, "[t]here is also no requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding." *Gorsoan Limited v. Bullock*, 652 Fed.Appx. 7, 9 (S.D.N.Y. 2016) (summary order). The fact that the discovery sought may exceed discovery available in the foreign proceeding or otherwise be unavailable in that proceeding has also been rejected. Nor is there a requirement that the discovery sought be proven to be admissible or usable at the present stage of

the proceeding.  *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015) ("A 'proceeding' means the entire proceeding, not merely its initial stage.").  Because there are no proof-gathering restrictions under Lithuanian law implicated here, this factor also favors the discovery.  *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014) ("Because there is no reason to believe that Hornbeam's effort to obtain materials not discoverable in the BVI through § 1782 would undermine 'principles of comity' or 'cooperation' with the BVI, this factor weighs in favor of – or at least not against – granting Hornbeam's Application.").

### 4.  *The requests are narrowly tailored and not "unduly intrusive or burdensome"*

The fourth *Intel* factor favors the Applicant because the requests for discovery are not overly burdensome or duplicative.  *See Esses v. Hanania (In re Esses)*, 101 F.3d 873, 876 (2d Cir. 1996) (per curiam) (affirming discovery where there was no "indication that the district court's order is overly burdensome or duplicative"); *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) (no undue burden where the document request was "specifically and narrowly tailored").

In this case, the Applicants' discovery requests are narrowly tailored to the Applicant's efforts to trace the ultimate recipients of any fraudulent conveyances, or to determine whether any assets in the possession of unknown third parties which could be used to satisfy the Award. Further, the requested discovery involves a discrete universe of documents relating to payments in United Stated dollars that necessarily utilized the services of a United States intermediary bank.  *In re Application of Hornbeam Corp.*, 2014 WL 8775453, at *5 (S.D.N.Y. Dec. 24, 2014) (granting 1782 application where applicant "sought records only for those transactions in which the Banks acted as intermediary banks"). The relevant documents should thus be easily identifiable, readily accessible, and not burdensome for the Intermediary Banks to produce.  Intermediary banks "routinely receive and comply with similar subpoenas issued pursuant to 28 U.S.C. § 1782." *In re*

16

*Application of Hornbeam Corp.*, 2014 WL 8775453, at *5 (S.D.N.Y. Dec. 24, 2014). To the extent that the Applicants' document requests somehow create burden issues, the Applicants will, of course, meet and confer with the Intermediary Banks in an effort to resolve them.

## IV.   <u>CONCLUSION</u>

In summary, consistent with the precedent cited above, the facts in the present matter clearly meet the requirements of 28 U.S.C. § 1782 and the related discretionary factors weigh in favor of granting discovery, and this Application for the Order allowing the issuance of the requested subpoenas to the Intermediary Banks should be granted.

Dated:  April 13, 2020                                      Respectfully submitted,


/s/ Matthew Feser
Patrick Salisbury
Matthew Feser
SALISBURY & RYAN LLP
1345 Avenue of the Americas
2nd Floor
New York, New York 10105
Tel: 212.977.4660
Fax: 212.977.4668

*Attorneys for Applicant*